JULIO ROSSI, *p. a. vs.* VALENTINO RONCI.

JULY 20, 1939.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J. This is an action of trespass on the case for negligence. The plaintiff, a minor fifteen years old who sues by his father as next friend, seeks to recover damages for injuries which he received on April 28, 1934, while working in the defendant's bakery. The plaintiff's left hand and forearm were caught in a dough rolling machine, hereafter called a dough braker, which necessitated the amputation of the injured arm just above the elbow.

It is undisputed that the defendant, who came within the provisions of the workmen's compensation act, had not taken the necessary steps to bring himself and his employees within the terms of that act. He was therefore subject to an action at common law for injury to an employee arising out of and in the course of his employment, but could not defend on the grounds that the employee was negligent; or that the injury was caused by the negligence of a fellow employee; or that the employee had assumed the risk of injury. *Faltinali* v. *The Great Atlantic & Pacific Tea Co.*, 55 R. I. 438, 488.

This is the second trial of the case. The first trial was held before a jury and resulted in a verdict for the plaintiff in the sum of $7500. On defendant's exceptions, the case was reviewed by this court in *Rossi* v. *Ronci*, 59 R. I. 307, 195 A. 401, and it was remitted by us to the superior court for a new trial because of errors of law.

Before the second trial was held, the plaintiff waived jury trial. The case was then tried by a justice of the superior

court, sitting without a jury, on the plaintiff's declaration which was originally in five counts, but which was reduced to four counts at the time of trial by elimination of the first count. The second count alleges negligence in employing the plaintiff, a person under the age of sixteen years, in violation of general laws 1923, chapter 85, sec. 6, as amended by public laws 1923, chapter 482, sec. 5. We shall hereafter refer to this count and statute in more specific terms. The third count alleges a violation of P. L. 1928, chap. 1231, section 1, which limits the hours of work of a person under the age of sixteen years to forty-eight hours a week. The fourth and fifth counts charge the defendant with failure to give the plaintiff proper instructions.

The transcript shows that testimony was introduced in support of all these counts. At the close of the evidence the trial justice reserved decision. Later, he filed a rescript in which he makes separate findings as to each count and ends by deciding for the defendant on all counts. When the case was argued before us, the plaintiff in open court waived all his exceptions as to counts three, four and five, thereby restricting his claim of prejudicial error to the findings and decision of the trial justice on the second count of the declaration.

The statute, upon which the plaintiff now relies and which is fairly identified, if not specifically mentioned in the second count of the declaration, deserves serious consideration. The original statute, G. L. 1923, chap. 85, sec. 6, under the title "Of Factory Inspection", in part reads: "No minor under sixteen years of age shall be allowed to clean machinery while in motion, unless the same is necessary and is approved by said inspectors (factory inspectors) as not dangerous." The remaining part of the section deals with matter entirely foreign to this case. We find no case in our reports where the violation of this narrow and qualified statute is made the basis of a decision by this court.

The amendment to this statute, P. L. 1923, chap. 482, entitled "An Act to Secure More Adequate Regulations for the Protection and Safeguarding of Children in Industry", is specific, comprehensive and unqualified. Section 5 provides as follows. "No minor under sixteen years of age shall be employed or permitted to work in operating or assisting in operating any of the following machines . . . dough brakes . . . of any description . . . or in any capacity . . . in cleaning machinery in motion."

A mere reading of the original statute and its amendment shows a clear intent on the part of the legislature to impose, in unequivocal language, a direct duty on an employer not to do a certain act, namely, to employ or to permit a minor under sixteen years of age to work on certain machinery, including a dough braker, or to permit him, while employed in any capacity, to clean the same while such machinery is in motion. It is generally the rule that a statute shall be so construed as to make effective the legislative intent, having due regard to the public necessities subserved. We note here that in this case we are not dealing with a general regulatory statute. The amendment, with which we are directly and solely concerned, does not seek to regulate generally the manner in which an act shall be done; it prohibits the doing of the forbidden act by the employer. What is said in this opinion is, therefore, restricted to this particular statute.

The statute in question is designed to protect children under sixteen years of age against the danger of personal injury to themselves from powerful machinery in motion. Taking into consideration the imprudence and lack of judgment incident to the immaturity of youth, the legislature, on grounds of public policy, was moved to forbid employers, in unmistakable language, from employing or permitting children under the specified age to work at certain machinery. The amendment under consideration developed the embryonic and qualified provision of the original statute

into a broad, positive and unqualified mandate to employers to obey its provisions.

Similar statutes have been considered by some courts, which apparently held that the violation of such a statute is conclusive evidence of negligence, or negligence as a matter of law, making the employer liable whenever such violation is shown to have been the natural and proximate cause of an injury to a person within the class intended to be protected. *Stehle* v. *Jaeger Auto. Mach. Co.*, 225 Pa. 348; *Karpeles* v. *Heine*, 227 N. Y. 74; *Inland Steel Co.* v. *Yedinak*, 172 Ind. 423; *Leathers* v. *Blackwell's Durham Tobacco Co.*, 144 N. C. 330; *Starnes* v. *Albion Mfg. Co.*, 147 N. C. 556; *Elk Cotton Mills* v. *Grant*, 140 Ga. 727; *Sharon* v. *Winnebago Furniture Mfg. Co.*, 141 Wis. 185; *Terry Dairy Co.* v. *Nalley*, 146 Ark. 448.

We appreciate the logic of these cases as better suited to carry out effectually the policy of such statutes; but in the absence from our statute of any provision having such effect, we are not inclined to go to the full extent of these decisions. In this state, the ordinary rule in actions for negligence is that the violation of a statute of general application is a circumstance to be considered in connection with all the other facts and circumstances in evidence on the question of negligence. See *Andrews* v. *Penna Charcoal Co.*, 55 R. I. 215, 221. We will follow this rule in the instant case, as far as practicable, in carrying out the intent and purpose of our legislature in enacting the statute in question.

After serious consideration, it is our opinion that in an action, based on a violation of this statute, for negligence resulting in injury to a minor under the age of sixteen years, evidence of such injury, of which the violation of this statute was a proximate cause, is *prima facie* evidence of liability, which, unless rebutted by evidence in favor of the defendant, entitles the plaintiff to recover. If such rebutting

evidence is introduced, the plaintiff is entitled to recover, if the evidence in favor of the plaintiff is of greater weight than the evidence in favor of the defendant on the question of liability. To give less effect to the statute would defeat the purpose which it was intended to accomplish.

The testimony in this case deserves careful consideration. The plaintiff is the only witness to testify in his behalf regarding the accident. His testimony in substance is that he was slightly under fifteen years of age when, in January 1934, he was employed by the defendant to work in the latter's bakery; that, in connection with his work as a general helper, he was told by the defendant to watch how one "Michele", another employee, rolled bread on the dough braker and cleaned the machine after such rolling; that some two weeks thereafter the defendant employed and permitted him to operate and clean that machine almost daily while he, the defendant, or his son Samuel Ronci, who had charge of the bakery in his father's absence, or both, were present; that the machine could not be cleaned unless it was in motion, and that he, the plaintiff, cleaned it first with a scraper and then with a flour bag wrapped around his hand and forearm, just as Michele always had done.

The plaintiff further testified that the defendant had been working in the bakery up to within a short time of the accident, which happened about 3 o'clock in the afternoon of April 24, 1934; that while he, the plaintiff, and Samuel were cleaning behind some benches, the defendant told them to "Start in to clean the machines", whereupon Samuel said to the plaintiff "I will clean the big one and you clean the small one," meaning the dough braker on which the plaintiff had been working that afternoon. Shortly after this conversation the defendant left the bakery. The plaintiff also testified that he had the dough braker "almost all cleaned" when he was injured; that Samuel was then washing the big machine; and that it was Samuel who stopped

the machine by shifting the electric switch on the right side of it.

The testimony for the defendant bears close examination as it shows inconsistencies and contradictions in connection with controlling circumstances in the case. It was with considerable hesitation that the defendant admitted signing a school certificate as the prospective employer of the plaintiff. The defendant's testimony, as to whether the plaintiff was in fact employed by him, was so vague and indefinite that, at times, it almost seemed as if he were going to deny that the plaintiff was ever in his employ. The following testimony in direct examination is an instance of this kind. "Q. How much work would he do there say in February, 1934. A. Well, he done no work. When he felt like it he would do a little something, and when he don't feel like doing anything he would throw himself to the floor and lay down like a dog. Q. Was that so up to the time of this accident? A. Yes."

The defendant's answers to questions, also in direct examination, as to whether he had instructed the plaintiff to watch how Michele operated the dough braker, or whether he had employed or permitted the plaintiff to operate and clean that machine, were of an entirely different character. They consisted of emphatic denials and of statements expressing either constant warning to the plaintiff to keep away from the dough braker or solicitude for his future welfare. Some of the defendant's testimony on these points follows. "Q. Did you tell him whether he could work on the small machine? A. No, No, I never. No. I never said anything to him. All I said was for him to watch because when he grew up, then he could work at the machine. . . . Q. Did you tell him to watch Michele Guisti? A. Well, some times I would say, 'Watch them all,' whether Mike Guisti or the others, 'because if you watch, you learn,' because Mike wasn't always there.".

Q. "Did you ever at any time tell him to clean the small machine? A. No, because whoever mixes that dough, after it is taken out of the machine, it needs to be cleaned right after, because if you don't, it hardens up in the machine. Q. Did you ever see him pushing dough through the small machine? A. No, I never wanted him to go near that machine. . . . Q. You say you didn't see him putting dough in this machine and so from that you say he didn't clean it. A. No, I don't know. I have never seen him, anyway."

The defendant's testimony as to occurrences on the day of the accident seriously conflicts with the testimony of his son Samuel, to which we will soon refer. According to the defendant, the last mixing and rolling of bread for that day was finished by 4 or 5 o'clock in the morning; that about that time both the mixer, or big machine, and the dough braker, or little machine, which were the only two machines in the bakery, were cleaned by himself or his son Samuel; and that by not later than 9 o'clock, a. m., there was no more work to be done in the bakery for that day.

He further testified that in the afternoon of that day the plaintiff was doing "Nothing. He was sitting out there in front of the store", which adjoins the bakery, while Samuel was in the bakery; that the plaintiff was in the store with him "making up the accounts with the driver" up to within a few minutes before the accident; that the plaintiff then disappeared, and that soon thereafter, hearing some one scream in the bakery, he went there and found the plaintiff with his arm in the dough braker.

Samuel Ronci did not testify in person at this trial. The testimony which he gave at the first trial of this case was read into the record by agreement of counsel. He testified that he was "the boss around there", meaning the bakery; that he had charge of all the help, and that he was the one who showed the plaintiff how to work and clean the small

machine. He also admitted ordering the plaintiff to clean the machine on a number of occasions and that the plaintiff had carried out his orders in that respect. He denied that Michele worked on the dough braker, or that he, Samuel, had instructed the plaintiff to clean that machine on the day of the accident.

According to Samuel's testimony, he and his father had cleaned the dough braker, but not the mixer, sometime between 11 and 12 o'clock, a. m.; that his father left the bakery "Maybe five minutes. Not quite five minutes" before the accident, leaving him alone in the bakery; that when the plaintiff, who was carrying bread from the bakery to the store that afternoon, came into the bakery just before the accident, he, Samuel, was "Sitting on the floor finishing to dry up the floor and scraping the dough that was on the machine. . . . The big mixer"; that he was sitting "sideways" to the dough braker, with the switch on that machine in his line of vision; and that he then told the plaintiff to go home and dress up, as he would take him to a show that night.

Samuel's testimony as to the accident is that soon after he had thus spoken to the plaintiff, he saw him walking near the dough braker, turn on the switch and get his hand caught in the machine. "Q. Did you see him turn the switch on? A. Yes. Q. How long was it after he turned the switch on—. A. The minute he turned the switch on he hollered, before I could say, 'What are you going to do to that machine?' The minute I heard the switch he hollered, before I could tell him to keep away." In another place in his testimony Samuel testified that the plaintiff stopped the machine himself, and "he rerolled it", meaning that the plaintiff put the machine in reverse in an attempt to extricate his arm before he, Samuel, could reach the machine. This testimony, if believed, endows the plaintiff, a boy under sixteen years of age, with astonishing stoicism.

Michele Guisti, generally referred to as Michele in the testimony, testified that he did odd jobs around the bakery for his board and one or two dollars a week pocket money; that he left shortly after the plaintiff came to work in the bakery; and, that during the almost two years that he worked for the defendant he never operated or cleaned the machine because of fear, even though the defendant urged him to "Learn how to roll bread." The following testimony is illustrative. "Q. And did you ever clean any of the machines, yourself? A. No. I would never get close to it because I was afraid, and not even he (the plaintiff), because he was while I was there. . . . Did you ever try to run one of these machines? A. No. I was afraid." This witness lived for a considerable time with the defendant's sister, but whether it was before or after the accident to the plaintiff is not clear.

The only other witness to testify for the defendant was Peter Cardi, the defendant's son-in-law. The substance of his testimony is that, when he visited the plaintiff at the hospital a few days after the accident, the plaintiff stated that he did not know how the accident happened, and that the defendant did not tell him "to go to clean the machine."

In rebuttal, the plaintiff testified that when his arm was in the machine it was impossible for him to turn off the power as the switch was beyond his reach. He further testified that when he talked to Cardi at the hospital he told him that he was ordered by the defendant to clean the machine.

Vincenzo Lanzi, the father-in-law of the plaintiff's sister, testified that he met Samuel Ronci, the defendant's son, at the hospital on the day of the accident, where the following conversation took place. "I says to Sam 'How did this accident happen today', and he says to me, 'We were cleaning the

machines.' Sam was cleaning the mixing machine and this Rossi was cleaning the rolling machine."

We have examined the testimony with great care and have referred to it at length in this opinion because we cannot sustain the decision of the trial justice in favor of the defendant. His rescript recites with considerable detail the testimony of the plaintiff and of Samuel Ronci, as if by way of comparison, and then briefly summarizes the testimony of the defendant and of Michele Guisti, stressing that part of their testimony which says that the plaintiff was not instructed, or seen cleaning, or ordered to clean the dough braker. The testimony of Peter Cardi and of Vincenzo Lanzi is not even mentioned, nor is any reference made to the contradictions on controlling points in the testimony of the defendant, of Samuel Ronci and of Michele Guisti, which seriously affect the credibility of these witnesses when the testimony of one is compared with that of the others.

Immediately following his statement of the testimony, the trial justice says: "It will be noticed that all the witnesses who testified to these pertinent facts were interested witnesses, with the possible exception of Michele Guisti. Plaintiff is an interested witness and the defendant and his son Samuel are interested witnesses. In this state of the proof and after *seeing* the witnesses and weighing their testimony, I find: (1) that the plaintiff has failed to prove by a fair preponderance of the evidence that he had any occasion to work on or about the dough braker or to clean the same at the time he was injured; (2) that the plaintiff has failed to prove by a fair preponderance of the evidence that he was directed to work on or to clean the dough braker either by Samuel Ronci, his immediate supervisor, or by the defendant at the time of or prior to the accident, on the day of the accident; (3) that the plaintiff has failed to prove by a fair preponderance of the evidence that he was justified by general instructions from said Samuel

Ronci or from the defendant, or any one else in the employ of the defendant, or by any course of prior employment, in attempting to work on or around the dough braker or to clean the same on the day of the accident; . . . ." (italics ours)

The weight of the evidence is to be determined by the touchstone of credibility rather than by the number of witnesses. This basic rule is cogently expressed in 5 Wigmore on Evidence, §2498: "There is no measure of the weight of the evidence (unless the witnesses on the evidential facts are counted) other than the *feeling of probability* which it engenders." The record in this case presents two irreconcilable versions as to the circumstances surrounding this accident, with the testimony for the defendant in hopeless conflict on material points. Viewed as a whole, the doubt inherent in the testimony for the defendant clearly tends to support and not to rebut the plaintiff's claim. In finding facts favorable to a party, a trier of facts is not confined to the testimony directly offered by that party, but may gather those facts from the testimony produced by an opponent.

Furthermore, testimony which bears upon the credibility of a witness on a material point, even though it be by way of verbal admissions, cannot be entirely disregarded. In this case the trial justice apparently gave no consideration to the testimony of Peter Cardi and of Vincenzo Lanzi, especially that of the latter since it flatly contradicted the testimony of Samuel Ronci, who did not testify in person at this second trial, on a controlling point in the case. Generally speaking, verbal admissions, when admissible in evidence, should be scrutinized with care, as they are subject to falsification and abuse; but they should not be rejected without fair consideration and, much less, entirely ignored.

The trial justice is in error when he says that he reached his conclusions "after seeing the witnesses." He certainly did not see Samuel Ronci, whose testimony at the first trial was read into the record of the instant case upon the ground that he was in California. In the circumstances, this court is in as good a position as the trial justice in passing upon the credibility of that testimony.

In the instant case, we cannot give to the findings of fact by the trial justice the weight that is ordinarily accorded to such findings as, in our judgment, his decision for the defendant is clearly wrong. He determined the weight of the evidence under a misconception of the credible evidence in the case and he failed to consider pertinent testimony which had a direct bearing on the question of liability. We find nothing in the rescript that impugns the credibility of the plaintiff, unless it be inferred from the fact that more witnesses testified for the defendant. But looking at the substance of their testimony and considering material inconsistencies therein, the most that can be said for the defendant's case is that it does not engender a feeling of probability. It lacks persuasive force.

For the reasons stated, we are of the opinion that the trial justice committed prejudicial error in deciding for the defendant.

The plaintiff's exception is therefore sustained, and the case is remitted to the superior court for a new trial on all issues.

*Peter L. Cannon,* for plaintiff.

*Henry M. Boss,* for defendant.