**Kimberly ERRICO et al.,**

v.

**Joseph LaMOUNTAIN et al.**

**No. 97–42–Appeal.**

Supreme Court of Rhode Island.

June 19, 1998.

Michael DiChiaro, Jr., for Plaintiff.

Richard A. vanTienhoven, Providence, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

FLANDERS, Justice.

Cutting to the core of this cautionary tale from the world of landlord-tenant law, a Superior Court jury determined that a wooden railing's collapse caused a tenant to fall from the balcony of her second-story apartment. After the tenant leaned against the rotten railing, it gave way, plunging her headlong onto the concrete walkway below and causing her to suffer grievous personal injuries. The jury found that the railing constituted a dangerous condition, that this condition caused her injuries, and that the landlords were liable to the tenant for their negligence in failing to repair the defective railing or to warn the tenant about its defective condition. Because we conclude that the Residential Landlord and Tenant Act, G.L.1956 chapter 18 of title 34 (the act), imposed a duty on the landlords to maintain the railing in a fit and habitable condition, that substantial evidence in the record supported the jury's finding that the landlords were negligent vis-à-vis the railing, and that the trial justice properly instructed the jury on this issue, we affirm the judgment below, uphold the jury's verdict, and concur with the trial justice's denial of the landlords' motion for a new trial.

### Facts and Travel

In early September 1989 plaintiff-tenant Kimberly Errico (Errico), then a senior at Providence College, began living with two friends in a three-bedroom rental apartment in Providence. The apartment occupied the second floor of a house owned by the landlord-defendants, Joseph and Eileen LaMountain (defendants or LaMountains) and included a front balcony that was approximately

four feet deep and extended across the entire front of the house's second floor. Enclosed by a wood railing, the balcony could be accessed only from Errico's apartment.

On the evening of September 18, Errico ventured onto the balcony to look for one of her roommates. She put her left hand on the railing to brace herself while she leaned over to peer below. As she did so the railing immediately gave way, and she and the entire railing panel between two columns on the porch plummeted fifteen feet to the concrete walkway on the ground level. As a result Errico sustained various injuries, including head lacerations requiring several stitches, a concussion, and multiple fractures to her pelvis.

In 1991 Errico filed a negligence complaint against the LaMountains, alleging that at all relevant times the balcony area was maintained, cared for, and inspected by them and that at the time of her fall the railing was negligently, recklessly, and carelessly kept in an unsafe and defective condition.[1] Errico further claimed that as a direct and proximate result of her fall, she sustained severe and permanent personal injuries of both a physical and a mental nature and that she suffered and would continue to suffer in the future lost wages as well as pain and suffering. The matter proceeded to trial, during which both parties presented their evidence and rested, whereupon the LaMountains moved for a directed verdict (now a judgment as a matter of law) pursuant to Rule 50 of the Superior Court Rules of Civil Procedure. The trial justice denied this request, and thereafter the jury returned a verdict for plaintiffs in the amount of $100,000. In due course the trial justice denied defendants' later motion for a new trial, and this appeal ensued.

The defendants press several alleged errors on appeal, including various challenges to the trial justice's jury instructions and denial of their new-trial motion. For the reasons stated below, we affirm the judgment and deny the appeal.

### Analysis

#### A. Residential Landlord and Tenant Act

At common law a landlord was not liable for injuries sustained by a tenant or a guest on the leased premises unless the injuries resulted either from a latent defect known to the landlord but not to the tenant or from the landlord's breach of a covenant to repair in the lease. *Ward v. Watson*, 524 A.2d 1108, 1109 (R.I.1987); *see also Coppotelli v. Brewer Yacht Yard at Cowesett, Inc.*, 636 A.2d 1326, 1327 (R.I.1994); *McGuire v. Folly Landing Restaurant, Inc.*, 636 A.2d 1325, 1326 (R.I.1994); *Munzi v. Kennedy*, 538 A.2d 1015, 1016 (R.I.1988). The defendants urge that their conduct in this case was "clearly governed" by this line of authority and that application of the common-law rule should have shielded them from any liability. They further claim that their lease agreement with Errico contained no express covenant to repair, that there was insufficient evidence of a defect in the balcony railing or, if the railing was defective, the defect was latent and they were unaware of any railing problem when they entered into the lease with Errico. For the reasons explained below, defendants' reliance on the common-law rule is misplaced because it no longer serves to immunize residential landlords from liability for their failure to put and keep the leased premises in a fit and habitable condition.

■ The defendants' duties to Errico were defined and governed by the act, which took effect on January 1, 1987, and applies to rental agreements for residential dwelling units[2] entered into, extended, or renewed after that date. *See* §§ 34–18–7 and 34–18–54. The LaMountains' 1989 lease with Errico was such a rental agreement. In passing the act the Legislature hoped to "[s]implify, clarify, modernize and revise the law governing the rental of dwelling units and the rights and obligations of landlords and tenants."

---

1. Errico's parents were also plaintiffs in this action and sought damages for various injuries they suffered as a result of their daughter's injuries.

2. A dwelling unit is defined by the act as "a structure or part of a structure that is designed or intended to be used as a home, residence, or sleeping place by one or more persons." G.L. 1956 § 34–18–11(4).

Section 34–18–2(b)(1). Thus the act's intended and actual effect is to supersede any common-law rules relating to residential tenants and landlords in conflict with its provisions. Among those obligations that the act imposes on landlords is the duty to "[m]ake all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition." Section 34–18–22(2).[3] This duty, one of several set forth in the act as part of a landlord's ongoing responsibility to maintain the leased premises, is a continuing one, and the act does not provide that it ceases when the tenant takes possession of the leased premises. Hence we agree with Errico that § 34–18–22(2) created a duty that the LaMountains owed to her by operation of law and that this duty was in full force and effect when the railing on her apartment balcony collapsed.

■ The trial justice instructed the jury that defendants, as owners and landlords of Errico's leased premises, owed a duty of care to Errico as the tenant. Specifically she charged that they "must first decide whether the railing, as it existed in September of 1989 constituted an unreasonably dangerous condition." In the event they so found, she further instructed the jury that

"[t]hen you must consider whether the defendants knew, or should have known * * * about the dangerous condition that the railing posed. You may consider all the facts and circumstances proved at trial, including whether a reasonable inspection would have disclosed or uncovered the condition of the railing.
* * *

"If you find that, one, the rail presented an unreasonably dangerous condition and if you find that two, the condition could have been discovered upon a reasonable inspection and you find three, that the defendants should have known of the dangerous condition if they conducted an inspection, such an inspection, you must find that the defendants breached their duty of care to plaintiff and you must find for the plaintiff on the question of the defendants' negligence."

With respect to the landlords' specific duty to repair and to keep the leased premises in a fit and habitable condition, the trial justice also charged the jury that if it found that defendants had violated this duty imposed by the act, it "may" consider such violations as "evidence of their negligence."

■ We conclude that these instructions accurately described the duty of care owed by defendants to Errico under the act. Moreover, the trial justice's charge also comported with Rhode Island's requirement that a statutory violation does not relieve a jury of its responsibility to find a breach of a duty of care, see Paquin v. Tillinghast, 517 A.2d 246, 248 (R.I.1986), but rather serves as prima facie evidence of liability, "which, unless rebutted by evidence in favor of the defendant, entitles the plaintiff to recover. If such rebutting evidence is introduced, the plaintiff is entitled to recover, if the evidence in favor of the plaintiff is of greater weight than the evidence in favor of the defendant on the question of liability." Rossi v. Ronci, 63 R.I. 250, 254–55, 7 A.2d 773, 776 (1939). Thus if the evidence demonstrated that the balcony railing was in an unreasonably dangerous condition when it collapsed and caused Errico to fall and that defendants knew or should have known about that condition and yet failed to take corrective action, then a jury was entitled to conclude that defendants had breached their duty of care to Errico.

■ We agree with the trial justice that the evidence introduced at trial was sufficient to justify a finding that the wooden railing had deteriorated "well, well before the events of the Fall of 1989." Testimony established that just after the accident the ends of the railing's wooden spindles appeared to be rotten at the very point where they became detached during Errico's fall. Photographs introduced at trial further substantiated the railing's visible deterioration. And the unobjected-to evidence that defendants replaced the entire railing with new wood several

3. The imposition of such duty is consonant with this Court's previous admonitions that the common law's general rule that a lessor is not under a duty to maintain the leased premises may be abrogated by a statute or a controlling covenant in the lease. See Harbor Marine Corp. v. Briehler, 459 A.2d 489, 491 (R.I.1983).

months after the accident (and then reinforced the new railing by installing metal corner brackets) was also corroborative of the railing's unfit condition at the time of the fall.

To buttress their position that the railing had not been defective and that in any event they made reasonable inspections thereof, defendants rely in part upon the trial testimony of Mrs. LaMountain. She testified that "every year" she inspected the balcony, making a visual and tactile check of the railing ("I would just give it a good shake and test it"). She further testified that as a result of her inspection she believed the railing to be "perfectly safe." However, we note that the trial justice concluded that Mrs. LaMountain "was not a credible witness" and that "[h]er testimony in particular about her inspections and testing of the porch rail were not credible." The defendants also point to the testimony of Mr. LaMountain, whom the trial justice acknowledged was a "somewhat more credible" witness than his wife. He had inspected the railing during the course of painting it. Indeed he said he had given it a "good hard brush." But Mr. LaMountain, who knew the house was sixty years old when he purchased it, only painted the railing twice while he owned the structure, never leaned against it to test a person's weight, and never had the toe rail checked by a carpenter before the accident. We conclude that the observable evidence of the railing's physical deterioration, in conjunction with defendants' admission that they had inspected the railing at various times before the accident occurred, supports the conclusion of the jury and the trial justice that the railing was structurally unsound when Errico fell and that defendants either knew of this condition or failed to inspect the railing properly to detect this structural problem, thereby breaching their statutory duty to Errico.[4] In light of the evidence supporting defendants' breach of their duty to repair and to maintain the leased premises in a fit and habitable condition, we conclude that none of the other alleged misstatements in the trial justice's negligence instructions—if in fact they were erroneous—constituted reversible error.

### B. *Res Ipsa Loquitur*

The defendants also argue that the trial justice committed error when she instructed the jury on the applicability of the doctrine of res ipsa loquitur to the case at bar. They contend that the doctrine is inapplicable here because other causes for Errico's injuries were not sufficiently eliminated by the evidence. In particular, they claim that the balcony railing that caused Errico's injuries was within the exclusive control and possession of Errico and her roommates at the time of the fall and for some three months before the accident.

Res ipsa loquitur is not a rule of either procedural or substantive tort law but is rather a form of circumstantial evidence. *See Konicki v. Lawrence*, 475 A.2d 208, 210 (R.I.1984). Where applicable, the doctrine "establishes inferential evidence of a defendant's negligence, thus making out a prima facie case for a plaintiff, and casts upon a defendant the burden of rebutting the same to the satisfaction of the jury. * * * [T]he burden of proof remains on the plaintiff, but the defendant has the burden of going forward with the evidence." *Marshall v. Tomaselli*, 118 R.I. 190, 197 n. 3, 372 A.2d 1280, 1284 n. 3 (1977).

In *Parrillo v. Giroux Co.*, 426 A.2d 1313, 1320 (R.I.1981), this Court explicitly adopted the approach taken by the Restatement (Second) of Torts § 328(D), at 156 (1965) for determining when this circumstantial-proof-of-negligence doctrine may be employed. Section 328(D) provides:

"(1) It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when

---

4. Given this evidence, a reasonable jury could easily have agreed with the trial justice's assessment that "[a] reasonable inspection would have uncovered the condition of the wood. A good shake, as the defendant demonstrated, was woefully inadequate for a second floor porch even in outwardly good condition which this rail was

not. * * * The test administered by the defendant wasn't sufficient for a rail in great condition. * * * [A] reasonable inspection would have uncovered the condition of the rail * * * [which] was a danger, as I said, prior to the time the plaintiff rented the apartment and then moved into the apartment."

(a) the event is of a kind which ordinarily does not occur in the absence of negligence;

(b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and

(c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.

"(2) It is the function of the court to determine whether the inference may reasonably be drawn by the jury, or whether it must necessarily be drawn.

"(3) It is the function of the jury to determine whether the inference is to be drawn in any case where different conclusions may reasonably be reached."

This approach disavows an earlier requirement of first having to establish a defendant's exclusive control of the premises for the doctrine of res ipsa loquitur to apply, thus parting company with Rhode Island's former rule that a plaintiff had to demonstrate that the defendant at the time of the accident exclusively controlled the instrumentality of the plaintiff's injury. *Parrillo*, 426 A.2d at 1320; *see also Marshall*, 118 R.I. at 197–98, 372 A.2d at 1284 (stating former Rhode Island rule). But after *Parrillo* a plaintiff need not eliminate all other possible causes of the accident for the doctrine to apply. "All that is required is that the plaintiff produce sufficient evidence from which a reasonable [person] could say that, on the whole, it was more likely than not that there was negligence on the part of the defendant." *Parrillo*, 426 A.2d at 1319. Thus, Errico was not required to establish that defendants were in exclusive control of the second-floor balcony in order to obtain a jury instruction on res ipsa loquitur. As previously referenced, the photographic and physical-inspection evidence suggested that the railing had been defective even before this tenancy began and had been in this condition when defendants conducted their inspections. Moreover, the act would have allowed defendants to obtain access to Errico's premises at reasonable times during the tenancy to conduct repair work and to take any other necessary steps to keep this railing fit and the balcony area habitable. See § 34–18–26. And despite the LaMountains' suggestion that Errico was also negligent because she had been heaving garbage bags from the balcony when it collapsed, the mere presence of garbage bags at the scene was insufficient to lend any credence to this otherwise unsupported defense theory. Because the evidence in the record supported a jury charge on res ipsa loquitur and because that charge correctly followed the Restatement approach we adopted in *Parrillo*, we reject defendants' argument that the trial justice committed reversible error in instructing the jury on this issue.

### C. *Damages*

■ Finally, the defendants dispute the trial justice's instruction that the jury could award Errico compensation for her alleged future impairment and disability from the injuries she suffered in the fall. They claim that there was no competent medical testimony to substantiate such an instruction. However, we need not decide whether medical testimony normally would have been a necessary condition precedent to such an instruction because Errico testified without objection that she learned during a visit to her orthopedic physician that the continuing pain she was experiencing "would be permanent." Having failed to object or to move to strike this testimony at trial, the defendants are unable to challenge on appeal the uncontested evidentiary predicate for this challenged future-loss instruction to the jury.

### Conclusion

For these reasons, the defendants' appeal is denied and the judgment of the Superior Court is affirmed.