June 15, 2017

| | | |
|---|---|---|
| Joseph Aubin | : | |
| v. | : | |
| MAG Realty, LLC. | : | |

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Tel. 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

**Supreme Court**

No. 2016-42-Appeal.
(PC 12-495)
(Dissent begins on page 6)

Joseph Aubin              :

v.                 :

MAG Realty, LLC.        :


Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Flaherty, for the Court.** In this slip-and-fall case, we are called upon to determine whether the trial justice misstepped when she granted the defendant's motion for judgment as a matter of law. The plaintiff, Joseph Aubin, alleged that he slipped on a patch of "black ice" in the paved parking area adjacent to his apartment building, which was owned by the defendant, MAG Realty, LLC. The plaintiff claimed that his fall resulted in a torn rotator cuff that required surgery and caused the plaintiff to be unable to work for a period of several months. The plaintiff argues on appeal that the trial justice erred because issues of fact remained in dispute; and, when reviewing the facts in the light most favorable to the plaintiff, it was possible for the plaintiff to prevail in his negligence action.

This matter came before us for oral argument on April 27, 2017, pursuant to an order directing the parties to appear and show cause why this appeal should not summarily be decided. After considering the parties' oral and written arguments and, after thoroughly reviewing the record, it is our opinion that cause has not been shown and that this case should be decided at this

time without further briefing or argument. For the reasons set forth in this opinion, we vacate the judgment of the Superior Court.

## Facts and Travel

During December 2010, plaintiff, Joseph Aubin, and his wife, Jennifer Aubin, were living at 208 Wood Avenue in Woonsocket. The apartment building was a "triple-decker" that was owned by defendant, MAG Realty, LLC, during the time relevant to this case. The Aubins had lived there for eight or nine years, and they occupied the second floor apartment.

On December 25, 2010, the Aubins went to a family get-together to celebrate Christmas at William Gilman's home. Mr. Gilman is plaintiff's brother-in-law and also a member of MAG Realty, LLC. At that family gathering, plaintiff and Mr. Gilman made plans to go together to Lowe's the following morning to purchase plywood so that plaintiff could replace the flooring in his apartment.

On the morning of the 26th, plaintiff went out to the parking lot adjacent to his apartment building to meet Mr. Gilman, as the two had planned. The plaintiff walked towards his truck to retrieve his wallet and keys, and, as he was doing so, he slipped and fell on a patch of black ice. The plaintiff landed with a thud on his left shoulder. The fall, according to plaintiff, resulted in a torn rotator cuff, which required surgery to repair. Also, while recovering from his injury, plaintiff contended that he required assistance with daily living activities and that he was unable to work for a period of five or six months.

In February 2012, plaintiff brought a single-count suit against defendant, alleging that defendant negligently maintained the premises and that defendant's negligence was the direct and proximate cause of plaintiff's shoulder injury. In an amended complaint filed in January 2015, plaintiff added several counts, including allegations that defendant violated the Residential

Landlord Tenant Act, G.L. 1956 chapter 18 of title 34, and specifically, § 34-18-22, by failing to keep the common areas of the premises in a clean and safe condition (counts 3 and 4).

Eventually, the matter came to trial; a jury trial spanning three days took place in December 2015. At the close of plaintiff's case, defendant moved for judgment as a matter of law, pursuant to Rule 50 of the Superior Court Rules of Civil Procedure. The defendant argued that plaintiff had presented no evidence that defendant was on notice of the black ice and, therefore, as a matter of law, plaintiff's claim must fail. The trial justice initially reserved on that motion. At the conclusion of defendant's case, defendant renewed its motion for judgment as a matter of law. Before sending the case to the jury, the trial justice granted defendant's motion from the bench. Judgment entered the same day, and plaintiff timely appealed to this Court.

**Standard of Review**

"Our review of a trial justice's decision on a motion for judgment as a matter of law is de novo." Giron v. Bailey, 985 A.2d 1003, 1007 (R.I. 2009) (quoting Gianquitti v. Atwood Medical Associates, Ltd., 973 A.2d 580, 589 (R.I. 2009)). "In reviewing a trial justice's decision on a motion for judgment as a matter of law, this Court is bound to follow the same rules and legal standards as govern the trial justice." Lemont v. Estate of Ventura, 157 A.3d 31, 36 (R.I. 2017) (quoting Roy v. State, 139 A.3d 480, 488 (R.I. 2016)). "The trial justice, and consequently this Court, must examine 'the evidence in the light most favorable to the nonmoving party, without weighing the evidence or evaluating the credibility of witnesses, and draw[ ] from the record all reasonable inferences that support the position of the nonmoving party.'" Id. (quoting Roy, 139 A.3d at 488). "Thus, a trial justice should enter judgment as a matter of law 'when the evidence permits only one legitimate conclusion in regard to the outcome.'" Roy, 139 A.3d at 488 (quoting Hough v. McKiernan, 108 A.3d 1030, 1035 (R.I. 2015)).

**Analysis**

"It is well settled that to prevail on a claim of negligence a plaintiff must establish a legally cognizable duty owed by a defendant to a plaintiff, a breach of that duty, proximate causation between the conduct and the resulting injury, and the actual loss or damage." Lemont, 157 A.3d at 37 (quoting Wray v. Green, 126 A.3d 476, 479 (R.I. 2015)). "Of the four well-worn elements of negligence, only duty is a question of law." Williams v. Alston, 154 A.3d 456, 459 (R.I. 2017). "[T]he remaining three elements of a negligence claim * * * are fact-based and * * * the '[trial] justice may treat the issue of negligence as a matter of law only if the facts suggest only one reasonable inference.'" Hall v. City of Newport, 138 A.3d 814, 820 (R.I. 2016) (quoting Berard v. HCP, Inc., 64 A.3d 1215, 1218 (R.I. 2013)).

Under the common law of Rhode Island, a landowner has a duty to exercise reasonable care for the safety of persons reasonably expected to be on the premises, and that duty includes an obligation to protect against the risks of a dangerous condition existing on the premises, provided the landowner knows of, or by the exercise of reasonable care would have discovered, the dangerous condition. See Tancrelle v. Friendly Ice Cream Corp., 756 A.2d 744, 752 (R.I. 2000). Beyond the common law duty, the Legislature has imposed a higher standard for landlords by enacting the Residential Landlord Tenant Act. See Giron, 985 A.2d at 1008. Section 34-18-22(a)(3) mandates, among other things, that "[a] landlord shall * * * [k]eep all common areas of the premises in a clean and safe condition[.]" The act "supersede[s] any common-law rules relating to residential tenants and landlords in conflict with its provisions." Errico v. LaMountain, 713 A.2d 791, 794 (R.I. 1998).

Here, it is clear to us that defendant, in its capacity as a landlord, owed plaintiff a duty to keep the common areas, including the parking area, "in a clean and safe condition[.]" Section

34-18-22(a)(3).[1]   Accordingly, unless "the facts suggest only one reasonable inference[,]" this case must be presented to the factfinder, which, in this case, was a jury.  Hall, 138 A.3d at 820 (quoting Berard, 64 A.3d at 1218).

At trial, plaintiff offered testimony that defendant would plow snow onto a grassy area that was above the blacktopped parking lot.  Consequently, when temperatures climbed above freezing during the day, snow and ice would melt and water would run across the parking area. Then, when the temperature dropped overnight, the water would refreeze on the paved parking area, resulting in patches of black ice, creating a dangerous condition.

The defendant contends that it should prevail as a matter of law because there was no evidence presented that there were snowbanks at the time plaintiff slipped[2] and, furthermore, there was no evidence that defendant had notice of a dangerous condition.  In making this argument, however, defendant overlooks Ms. Aubin's testimony.  At trial, Ms. Aubin testified that there were snowdrifts on the grassy area above the parking lot on the day that plaintiff injured himself.  Furthermore, Ms. Aubin testified that plaintiff had complained to defendant on at least two occasions about ice forming in the parking lot.

The defendant further argues that, because plaintiff complained only generally about icy conditions occurring in the parking area, but never about the specific patch of ice that he fell on,

---

[1] In its briefs, defendant devoted space to discussing the "Connecticut Rule," which abrogates a landlord's duty to keep surfaces clear of natural accumulations of ice and snow during a storm. See Benaski v. Weinberg, 899 A.2d 499, 502–03 (R.I. 2006).  In this case, weather data that was admitted into evidence indicated that there was a substantial snowstorm that began late on the day of December 26, 2010, the day that plaintiff fell.  However, at the time of plaintiff's fall, only trace amounts of snow were recorded.  Nevertheless, plaintiff alleges that he slipped on black ice that had formed the previous night, and not on freshly fallen snow.  Given the posture of the case before us, we must assume that plaintiff's allegation is true.  Accordingly, for the purpose of our review, the Connecticut Rule is inapplicable.
[2] The defendant concedes that "when snow was removed from the parking area, it was deposited onto the grassy area."  However, defendant's argument is that no snowbanks existed at the time that plaintiff fell.

defendant did not have sufficient notice of the dangerous condition. Therefore, defendant asserts that, as a matter of law, it should prevail. We are not persuaded by this argument.

This Court, in <u>Dawson v. Rhode Island Auditorium, Inc.</u>, 104 R.I. 116, 128, 242 A.2d 407, 414-15 (1968), held that the defendant building owner, even though it had never been given notice of the specific leak that caused the plaintiff's injuries, had notice of the leak in its roof because the defendant previously had notice that its roof was generally leaky during heavy rains. Here, the situation is analogous. The defendant had notice that icy conditions were present on its property during certain types of weather, and that icy conditions would come and go as the weather changed. In our opinion, it would be impractical to burden a tenant with the responsibility to call his landlord every day to give notice of new patches of ice in order to satisfy the notice requirement of a premises liability claim. Rather, this burden is sustained by providing notice of the recurring condition. And, if we credit Ms. Aubin's testimony, as we must for the purpose of this Rule 50 motion, then the inescapable conclusion is that defendant had notice of the dangerous, icy condition that existed in the parking area.

Because we do not weigh the evidence when analyzing a Rule 50 motion, it is our opinion that there was enough evidence to send the case to the jury.

## Conclusion

For the reasons set forth herein, we vacate the judgment of the Superior Court. The record shall be remanded to that tribunal.


**Justice Robinson, dissenting**. I respectfully dissent, but I do so rather vigorously. I readily concede that this is a close case. That being said, after long and intense reflection, I have concluded that the trial justice who presided over the jury trial in this case "got it right" when, at

the close of the evidence, she granted the defendant's motion for judgment as a matter of law pursuant to Rule 50 of the Superior Court Rules of Civil Procedure. I simply fail to perceive any basis in the record for concluding that a reasonable jury could legitimately have found the defendant liable under the facts as presented at trial.

I am well aware of our jurisprudence under Rule 50, whereby the trial justice, and indeed this Court, must "examine the evidence in the light most favorable to the nonmoving party" and "draw[] from the record all reasonable inferences that support the position of the nonmoving party." Lemont v. Estate of Ventura, 157 A.3d 31, 36 (R.I. 2017) (internal quotation marks omitted). I am likewise aware that the trial justice should enter judgment as a matter of law only when "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Rule 50(a)(1). However, I do not believe that this case surmounts even that rather low bar.

The courts of this jurisdiction have for many years adhered to "the Connecticut Rule" when dealing with a landlord's duties in the context of the ongoing falling of precipitation. See Benaski v. Weinberg, 899 A.2d 499, 502-03 (R.I. 2006). The relevant aspect of that Rule has been well summarized as follows: "[A]s a general rule, any duty to clear a natural accumulation of ice and snow is not triggered before a reasonable time after the storm ends." Berardis v. Louangxay, 969 A.2d 1288, 1292 (R.I. 2009) (citing Benaski, 899 A.2d at 503). The "Local Climatological Data" recorded by the National Oceanic and Atmospheric Association at Theodore F. Green Airport, which was admitted as an exhibit at trial, reflected the fact that it began snowing around 5:00 a.m. on December 26, 2010 and continued into December 27,

resulting in a substantial snowfall.[1]  Thus, as the trial justice recognized, under the "Connecticut Rule," MAG Realty would have had an arguable duty with respect to the black ice at issue only if said ice was formed prior to the start of the snowfall at 5:00 a.m. on December 26.  However, in my judgment, a thorough review of the record fails to reveal any meaningful evidence on which a reasonable juror could have reached such a conclusion.

The "Local Climatological Data" admitted at trial established the fact that there was no snowfall in the two days preceding December 26.  Additionally, plaintiff himself testified that he did not "notice anything" on the parking lot when he returned home on December 25.  The plaintiff's wife, Jennifer Aubin, also testified that she did not observe any ice on the parking lot when she and defendant returned home on December 25, at approximately midnight the day before her husband's fall.  Moreover, plaintiff's testimony with respect to the existence of snow piles, the melting of which, according to plaintiff, resulted in puddles in the parking lot, does not aid plaintiff's case due to the fact that he also testified that the area where he slipped was "a completely different area than [the area] where the puddling would occur."

I note as well that Ms. Aubin's testimony on cross-examination with respect to the snow she observed on the grassy area on December 26 was, in my judgment, insufficient to surmount even the rather forgiving criterion established by Rule 50.  She testified that, when she left the Aubins' apartment and went outside, she "d[id]n't remember seeing grass when [she] walked into the yard."  When she was asked if she "saw snow," she replied as follows: "Or something, because there would have been grass."  In addition, the following was her testimony:

> "[DEFENSE COUNSEL]: * * * Do you remember there being any piles of snow along * * * the area you can see the grass abuts the pavement?

---

[1] We note that plaintiff's testimony reflects the fact that his fall occurred at approximately 10:00 a.m. on December 26, 2010.

"[MS. AUBIN]: There were probably snow drifts there.
"[DEFENSE COUNSEL]: Okay. There were snow drifts there to your recollection?
"[MS. AUBIN]: Yes.
"[DEFENSE COUNSEL]: Okay. Do you remember how high they were?
"[MS. AUBIN]: At that time, no.
" * * *
"[DEFENSE COUNSEL]: * * * Do you remember how long those snow drifts had been there?
"[MS. AUBIN]: No, I do not.
"[DEFENSE COUNSEL]: Do you remember when the last storm would have been so that there would have been the snow drifts there?
"[MS. AUBIN]: No."

Significantly, Ms. Aubin also testified on cross-examination that she did not go outside and observe the parking area immediately after her husband "indicated" to her that he had fallen. However, she stated that she did go outside and observe the parking lot at some later point on December 26, although she was unable at trial to recall just when that was. When she was later asked during cross-examination if she observed the parking lot on "the afternoon of the 26th," she replied: "Possibly." It is far from clear from Ms. Aubin's testimony at what time of day she observed snowdrifts; and she similarly could not remember the size of the snowdrifts or how long they had been there. Accordingly, it is entirely conceivable that Ms. Aubin could have observed very small snowdrifts late in the morning, in the afternoon, or in the evening of December 26, which could have been the result of the snowfall on December 26. Additionally, it is my opinion that the utterly vague statement about the existence of ice in the parking lot, which Ms. Aubin testified was relayed to the landlord on at least two previous occasions, is simply inadequate to have met plaintiff's burden. Ms. Aubin's testimony does not even state when such

a communication was made to the landlord—whether it was a few days earlier, earlier in the month, earlier in the year, or even in some previous year.[2]

The evidence in this case would require a jury to speculate about exactly how the weather conditions in the days preceding December 26 could have resulted in the melting and refreezing necessary to have created the black ice at issue before the morning of December 26, on which plaintiff would later slip. See Scittarelli v. Providence Gas Co., 415 A.2d 1040, 1044 (R.I. 1980) (holding that "[t]he defendant's negligence remain[ed] a matter of speculation and conjecture" because the plaintiff failed to meet her burden of introducing evidence of negligence and, consequently, that the trial justice should have entered a directed verdict in the defendant's favor); see also Montuori v. Narrangansett Electric Co., 418 A.2d 5, 10-11 (R.I. 1980) (holding that the "plaintiff was unable to produce more than minimal direct evidence to establish the element of causation" and that, therefore, the trial justice should have granted the defendant's motion for a directed verdict). As the trial justice in this case perceptively stated: "[T]he jury would have to make assumptions concerning the rate at which snow, ice, and water might melt, freeze, or evaporate during the various weather conditions shown in the meteorological data charts." For that reason, the lack of expert testimony in support of the plaintiff's case is striking.

---

[2] The majority cites Dawson v. Rhode Island Auditorium, Inc., 104 R.I. 116, 242 A.2d 407 (1968), stating that that case held that a "defendant building owner, even though it had never been given notice of the specific leak that caused the plaintiff's injuries, had notice of the leak in its roof because the defendant previously had notice that its roof was generally leaky during heavy rains." While I do not quibble with the majority's statement, a reading of Dawson leads to the ineluctable conclusion that the facts which established that the defendant building owner in Dawson was on notice of the leaky roof are distinguishable from the vague comments on which the majority relies in the case before us. In Dawson, the defendant building owner had been aware of the leaks in the building's roof for years prior to the incident at issue in the case. Id. at 126-27, 242 A.2d at 413-14. Indeed, at one point the roof had "approximately 387 leaks." Id. at 126, 242 A.2d at 414. Moreover, the defendant building owner had taken measures over the preceding years to attempt to "resurfac[e]" the "chronic leaking condition of [the] roof." Id. at 127, 242 A.2d at 414. Accordingly, the factual situation in Dawson is, in my judgment, easily distinguishable from the instant case.

The trial justice was correct in stating that the jury would be asked to "make findings that are beyond their expertise as lay persons."  I fail to see how any reasonable juror could find in the plaintiff's favor based on the evidence presented at trial without engaging in impermissible conjecture and speculation.

Accordingly, I record my respectful but vigorous dissent.

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Joseph Aubin v. MAG Realty, LLC. |
| **Case Number** | No. 2016-42-Appeal. (PC 12-495) |
| **Date Opinion Filed** | June 15, 2017 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Francis X. Flaherty |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Patricia A. Hurst |
| **Attorney(s) on Appeal** | For Plaintiff: <br><br> Richard C. Tallo, Esq. <br> Kelly M. Fracassa, Esq. <br><br> For Defendant: <br><br> Richard A. van Tienhoven, Esq. |

SU-CMS-02A (revised June 2016)