July 3, 2018

**Supreme Court**

No. 2016-140-Appeal.
(PB 10-4502)

Rhode Island Resource Recovery      :
      Corporation

         v.                      :

Restivo Monacelli LLP.              :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Supreme Court

No. 2016-140-Appeal.
(PB 10-4502)
Concurring and dissenting
opinion begins on page 20

Rhode Island Resource Recovery     :
         Corporation

         v.             :

Restivo Monacelli LLP.        :

Present: Suttell, C.J., Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Robinson, for the Court.** The defendant, Restivo Monacelli LLP (Restivo),
appeals from a February 1, 2016 judgment in Providence County Superior Court in favor of the
plaintiff, Rhode Island Resource Recovery Corporation (Resource Recovery), in the amount of
$5,733,648.18, inclusive of interest. That judgment was entered following a jury trial and a
verdict in Resource Recovery's favor. On appeal, Restivo contends that the trial justice erred in
denying its motion for judgment as a matter of law for the following reasons: (1) Resource
Recovery was required to, but did not, present expert testimony with respect to proximate cause;
and (2) Resource Recovery did not have standing to assert a claim for "investment losses."
Restivo further claims that "the trial justice committed prejudicial error in his instructions to the
jury * * *." Restivo posits, additionally, that the trial justice erred as a matter of law by holding
that Resource Recovery was "'immune' from the *in pari delicto* defense and that the 'adverse
interest' exception to the defense applied to [Resource Recovery]." Lastly, Restivo contends on

- 1 -

appeal that the trial justice erred in denying Restivo's motion "to set off settlement amounts that [Resource Recovery] received from other parties from the jury's awarded damages * * *."

For the reasons set forth in this opinion, we vacate the judgment of the Superior Court.

# I

## Facts and Travel [1]

Resource Recovery is a quasi-governmental corporation established for the purpose of operating and managing the Central Landfill in Johnston. As will become clear from the discussion of the trial testimony *infra*, in 2007, when a new Executive Director of Resource Recovery (Michael OConnell)[2] was appointed, he uncovered a multitude of problems at said corporation. These included very large charitable donations to organizations which had no relationship to Resource Recovery's mission, overpaying for a purchase of real estate, and the fact that the funds in several of Resource Recovery's trust funds were not invested in accordance with Resource Recovery's policies. After the new Executive Director reported those problems to the Governor, a full forensic audit was undertaken, which confirmed many of the matters of concern that had been discovered by the new Executive Director. As a result, necessary reforms were implemented within Resource Recovery. This case arises out of a quest to determine the relative fault of various entities and persons with respect to the problems which plagued Resource Recovery and the time span during which those problems persisted.

---

[1]    Since this case can be resolved by solely evaluating Restivo's contention that Resource Recovery was required to present expert testimony as to proximate causation, we relate only the facts and standard of review necessary to analyze that contention.

[2]    Michael OConnell's name is spelled without an apostrophe in the briefs of both parties, in the transcript, and in other documents that are part of the record. For that reason, we do not use an apostrophe.

Of importance to the instant case is the fact that an audit of Resource Recovery was undertaken in each fiscal year. For fiscal years 1995 to 2005, the firm of Lefkowitz, Garfinkel, Champi & DeRienzo, P.C. (LGCD) served as Resource Recovery's auditor. However, for fiscal years 2006 and 2007, Restivo was hired to audit Resource Recovery. From 1996 to 2008, Van Liew Trust Company (Van Liew) was the trustee of the two trusts at issue in this case.[3] Subsequent to the above-referenced chain of events, Resource Recovery filed suit against LGCD, Van Liew, and Restivo. LGCD and Van Liew entered into separate settlement agreements with Resource Recovery. As such, we are confronted with only the suit by Resource Recovery against Restivo.

That suit was commenced on July 30, 2010, when Resource Recovery filed a Complaint containing five counts against Restivo arising from "the failures of Restivo * * * in its provision of auditing and accounting services to the Rhode Island Resource Recovery Corporation * * * during the time period between the summer of 2006 and the termination of its engagement on June 30, 2008." The five counts were as follows: professional malpractice (Count One); breach of contract (Count Two); aiding and abetting a breach of fiduciary duty (Count Three); civil liability for giving a false document to an agent, employee, or public official, in violation of G.L. 1956 § 11-18-1 (Count Four); and civil conspiracy (Count Five). On June 30, 2011, after Restivo's motion for a more definite statement as to Counts Three, Four, and Five was allowed by the trial justice, Resource Recovery filed a document entitled "Plaintiff's More Definite Statement."

---

[3] We need not delve into the specific details relative to the two trusts at issue in this case. It suffices to know that the funds in those trusts were not invested in accordance with Resource Recovery's policies. We do note, for the reader's interest, that the record reflects the fact that there was a third trust, which related to the employee pension plan; but any issues regarding that trust are not pertinent to this case.

The Plaintiff's More Definite Statement contained the same five counts as had been set forth in the original Complaint. It went on to specifically allege that Restivo "negligently failed to identify – or actively participated in concealing – the true status of [Resource Recovery's] financial statements * * *." According to Resource Recovery, Restivo's "actions and/or omission postponed the detection of the mismanagement, wrongdoing, and corruption occurring at [Resource Recovery] and delayed [Resource Recovery] and other authorities from addressing the issues and avoiding subsequent losses."

Thereafter, on December 11, 2013, Counts Three, Four, and Five of the Plaintiff's More Definite Statement were dismissed with prejudice by stipulation, in accordance with Rule 41(a)(1)(B) of the Superior Court Rules of Civil Procedure. The only remaining counts were those alleging professional malpractice and breach of contract (Counts One and Two). The case ultimately progressed to a jury trial on those counts, which trial took place over eleven days in October and November of 2015. We relate below the salient aspects of what transpired at that trial.

## A

### The Testimony at Trial

### 1. The Testimony of Michael OConnell

Michael OConnell testified for Resource Recovery. It was his testimony that, at the time of trial, he was the Executive Director of Resource Recovery and had held that post since January of 2007. He testified that he was "responsible for the day-to-day activities" at the Central Landfill in Johnston and that he reported to the "board of commissioners." He explained that, when he started at Resource Recovery, the Chairman of the Board functioned as Resource Recovery's Chief Executive Officer, whereas Mr. OConnell, despite having the title of Executive

Director, was "just an administrator * * *." It was further his testimony that, in his first few months working at Resource Recovery, he identified "specific large issues" within the entity with respect to "charitable contributions; * * * consolidation of [Resource Recovery's] investments with one financial corporation; and * * * excessive prices that the corporation had paid for land that [it] bought for [an] industrial park."

With respect to the charitable contributions, Mr. OConnell testified that, although charitable contributions had been made by Resource Recovery, when he "looked at the mission of the corporation, it wasn't what we were supposed to do * * *." He stated that it was his "goal to limit or restrict it or tie it to [Resource Recovery's] mission." He further testified that, from fiscal year 2003 until fiscal year 2007, Resource Recovery had made charitable contributions in the amount of $2,092,163.95. He confirmed in his testimony that Restivo had conducted the audits of Resource Recovery for two of the years in that time period—*viz.*, fiscal years 2006 and 2007. He then detailed in his testimony certain charitable contributions which were made during the years that Restivo had conducted its audits but were not related to the mission of Resource Recovery. He further testified that funds were also spent on the involvement of board commissioners and/or employees as participants in charity golf events—"[a]pproximately $1,000 for each golf outing" and "approximately ten [outings] a year."

It was further Mr. OConnell's testimony that, at the start of fiscal year 2006, Resource Recovery had approximately one hundred million dollars in investments in the "employee pension investments" (the pension trust) and the two "landfill trust funds" (the two trusts at issue). He explained that the money in the "landfill trust funds" was set aside for the point in the future when the landfill would be filled to capacity and would no longer be taking in trash and, accordingly, no longer producing any revenue; he added that the money in the "landfill trust

funds" was used "to make sure that the landfill is properly maintained, it's properly fixed, it's properly secure."[4]  It was further his testimony that Van Liew managed all of the trust investments.  He stated that he had been concerned with having all of Resource Recovery's investments under the management of one small firm—*viz.*, Van Liew.  He also testified that, after assuming the position of Executive Director, he learned that a commissioner on the Resource Recovery Board of Commissioners was also a paid board member of Van Liew.  Furthermore, he answered in the affirmative when asked if, "at some point," he became "concerned with whether Van Liew had been making investments in accordance with the * * * rules and policies governing investments in the trust?"  He testified that he "came to find" that the investments in the trust funds were "in opposition to the investment strategy that the corporation had."

It was Mr. OConnell's testimony that he expressed to the Rhode Island Auditor General his "concern that [Resource Recovery] had excessive charitable contributions, [and] had concentration of assets [issues] to be resolved."  According to Mr. OConnell's testimony, he further expressed his concern to the Auditor General that Resource Recovery had "paid * * * inflated prices for real estate property" and had "failed to properly record them * * * on [its] financial statements."  He then testified that he also conveyed his concerns to the Governor at a meeting on November 12, 2007.  It was his testimony that the Governor ordered "a 45-day preliminary examination * * * to be done by the bureau of audits * * *."[5]  He further testified

---

[4]     Dean Huff, who was the Chief Financial Officer of Resource Recovery at the time of trial, described in his testimony the two trusts referred to by Mr. OConnell as the "landfill trust funds."  Mr. Huff described one trust as the "pollution remediation trust fund" and the other trust as the "closure/post-closure trust fund."

[5]     Mr. OConnell explained in his testimony that the Bureau of Audits "is a department of the state which typically does * * * internal audits. They audit the other agencies in the state." It

that the Governor instructed two of the commissioners on the Resource Recovery Board of Commissioners not to attend any further board meetings, thereby precluding the existence of a quorum.[6]  According to Mr. OConnell's testimony, the Bureau of Audits issued a document entitled "Preliminary 45-day Examination of Rhode Island Resource Recovery Corporation, Summary of Findings, March 2008."  Mr. OConnell testified that, as a result of the conclusions made in that document, the Governor "ordered a full forensic audit."  The full forensic audit resulted in a very lengthy report dated September 22, 2009.  In the Executive Summary of that report, it is noted that "the Bureau found numerous instances in which employees, vendors, and various current and former Commissioners, appear to have acted in ways that compromised their fiduciary and ethical obligations to [Resource Recovery] and to the public."

Mr. OConnell further testified that he believed that Restivo had "failed to do its job for Resource Recovery[.]"  He bluntly stated:

> "[Restivo was] a professional accounting and auditing firm who in the course of two years found no issues with Resource Recovery.  I came in in six months and I was tripping over issues, I couldn't help it, they were everywhere.  And they found nothing."

is important to note that Rhode Island has both an Auditor General and a Bureau of Audits.  The Office of the Auditor General is the State of Rhode Island's legislative audit agency.  *See* Office of the Auditor General, http://www.oag.state.ri.us/ (last visited July 2, 2018).  The Bureau of Audits, also called the Office of Internal Audit, "performs the auditing function for the Executive Branch of State Government, and falls under the Department of Administration."  *See* Office of Internal Audit, *About Us*, http://www.omb.ri.gov/internal-audit/about/overview.php (last visited July 2, 2018).  Reference was made, in the course of the testimony in this case, to both the Auditor General and the Bureau of Audits.

[6]     A quorum is defined as "[t]he smallest number of people who must be present at a meeting so that official decisions can be made * * *." Black's Law Dictionary 1446 (10th ed. 2014).

He testified that he terminated Restivo's services in June of 2008. He went on to detail the damages that Resource Recovery contended were incurred as a result of Restivo's alleged "failure to do its job."

## 2. The Testimony of Resource Recovery's Expert Witnesses

### a. The Testimony of Joseph Centofanti

Joseph Centofanti, who was called by Resource Recovery, was qualified as an expert witness in the areas of accounting and auditing. Mr. Centofanti, after being qualified as an expert, began his testimony by explaining the auditing process in general. It was his testimony that the audits of governmental entities were governed by "[g]enerally accepted accounting principles, generally accepted auditing standards, [and] government auditing standards * * *." He added that audits were also governed by the requirements imposed by the Rhode Island Auditor General and by the provisions in the contract between the parties. He noted that the requirements of the Auditor General included a requirement to report "any indications of fraud, abuse, or illegal acts that are noted * * *." Mr. Centofanti testified that, based on his review of extensive materials, which materials he detailed in his testimony at length, it was his opinion that Restivo "lacked the experience to perform an audit of a quasi-governmental entity." He further testified that Restivo "failed to test compliance with the applicable laws, regulations, contracts, and other agreements," "failed to identify and report the improper charitable contributions," and "failed to report internal control deficiencies that were identified." He provided details of how an auditor would test the compliance of the trust investments with the investment policies of the corporation; and he added that, except for a single comment in the papers which he reviewed, he "couldn't find any evidence * * * that [the trust investments were] reviewed for compliance" by Restivo.

Mr. Centofanti also testified as to the amount of money that had been donated by Resource Recovery in fiscal years 2006 and 2007 to charitable organizations which were not related to Resource Recovery's mission. He testified that the charitable contributions for those fiscal years constituted "indications of fraud or abuse." He further added in his testimony that, if Restivo had uncovered these contributions, it would have been obligated to report them to the Auditor General.

### b. The Testimony of Jerry DeNigris

Jerry DeNigris testified on behalf of Resource Recovery and was qualified as an expert in calculating and determining investment losses. He stated that he was hired to "view the activity, the securities purchased specifically, in these various trust accounts to determine first what they had actually made or lost; and to see - - really to compare them to investment policies to see whether or not the activity in the account was consistent with or complied with those investment policies." He testified that there were "securities that were out of compliance" with the investment policies of Resource Recovery. He stated that his analysis spanned from July 1, 2006 until January of 2008. It was his testimony that the "damages" resulting from those "nonconforming securities" amounted to $2,551,052.

### B

### Motion for Judgment as a Matter of Law

At the close of Resource Recovery's case-in-chief, Restivo moved for judgment as a matter of law pursuant to Rule 50 of the Superior Court Rules of Civil Procedure, arguing that, due to the fact that Resource Recovery did not present expert testimony on causation, there was "no evidence from which a reasonable jury could conclude that a breach by Restivo caused any of the plaintiff's purported damage." The trial justice deferred decision on that aspect of the

Rule 50 motion. Restivo presented its evidence, and it then renewed its Rule 50 motion at the close of all the evidence. The trial justice again deferred decision.

On November 3, 2015, the jury rendered its verdict, finding that Restivo "breach[ed] the standard of care owed to [Resource Recovery] in Restivo's audit of Resource Recovery's financial statements in fiscal year 2006 or fiscal year 2007" and that that breach proximately caused damage to Resource Recovery. It further found that Restivo breached its contractual agreement with Resource Recovery and that the breach of contract proximately caused damage to Resource Recovery. The jury allocated damages as follows: (1) $207,625.39 for losses "as related to charitable contributions;" (2) $83,500 for fees paid to Restivo under the contract between the parties; (3) $20,255 for fees paid to "Restivo's successor;" and (4) $2,551,052 for losses relating "to investments in the [trust funds at issue]."[7]

After the jury verdict was rendered, Restivo again renewed its Rule 50 motion on the same pertinent grounds as it had initially articulated. The trial justice issued a decision on January 11, 2016, in which he denied the motion. On February 1, 2016, final judgment entered against Restivo in the amount of $5,733,648.18, inclusive of interest. A timely notice of appeal was filed.

## II

### Standard of Review

Rule 50(a)(1) of the Superior Court Rules of Civil Procedure states that, "[i]f during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law * * *."

---

[7] We note that the jury did not make separate awards of damages with respect to the breach of contract and professional malpractice counts.

- 10 -

We have stated that "[o]ur review of a trial justice's decision on a motion for judgment as a matter of law is *de novo*." *Giron v. Bailey*, 985 A.2d 1003, 1007 (R.I. 2009) (internal quotation marks omitted). We conduct our review of a "motion for judgment as a matter of law in the same manner as the trial justice." *Plourde v. Myers*, 823 A.2d 1138, 1142 (R.I. 2003); *see also Botelho v. Caster's Inc.*, 970 A.2d 541, 544 (R.I. 2009). We examine "the evidence in the light most favorable to the nonmoving party, without weighing the evidence or evaluating the credibility of witnesses, and draw from the record all reasonable inferences that support the position of the nonmoving party." *Filippi v. Filippi*, 818 A.2d 608, 617 (R.I. 2003) (internal quotation marks omitted); *see also Wellborn v. Spurwink/Rhode Island*, 873 A.2d 884, 887 (R.I. 2005). "If, after such a review, there remain factual issues upon which reasonable persons might draw different conclusions, the motion for [judgment as a matter of law] must be denied, and the issues must be submitted to the jury for determination." *Marketing Design Source, Inc. v. Pranda North America, Inc.*, 799 A.2d 267, 271 (R.I. 2002) (internal quotation marks omitted); *see also Saber v. Dan Angelone Chevrolet, Inc.*, 811 A.2d 644, 648 (R.I. 2002). However, when "no relevant issues of fact exist and defendant is entitled to judgment as a matter of law, then the trial justice should grant the motion * * *." *Martinelli v. Hopkins*, 787 A.2d 1158, 1165 (R.I. 2001) (internal quotation marks omitted).

## III

### Analysis

On appeal, Restivo raises numerous contentions as to alleged error by the trial justice. However, we need focus our inquiry only on the contention that the trial justice erred in denying Restivo's motion for judgment as a matter of law because, as Restivo avers, expert testimony with respect to proximate cause was required in this case but was not presented by Resource

Recovery.  Due to the fact that our conclusion with respect to that issue is dispositive, we need not address the other contentions on appeal.

## A

### Expert Testimony as to Proximate Cause

With respect to the issue of expert testimony as to proximate cause, Restivo posits that the connection between its alleged breach of its professional duty of care and the damages Resource Recovery suffered is "beyond common knowledge and would not be obvious to a layperson."  As such, Restivo contends that expert testimony as to proximate cause was necessary in this case.  Restivo avers specifically that, in the instant case, "[n]o expert * * * testified what would have happened, and when it would have happened, if Restivo had, in fact, reported [Resource Recovery's] board's charitable gifts, the * * * trusts investments, or any other asserted fraud or abuse to the Auditor General."  Indeed, Restivo asserts that Resource Recovery "never presented any evidence of what it was that the auditor general or governor would do, when it would be done, and, most importantly, what effect that would have had on the damages." Restivo further contends that the fact that the "need for expert testimony to establish the causal link between Restivo's professional negligence and [Resource Recovery's] claimed damages is even more pronounced here because the concurrent negligence of other professionals— Lefkowitz and Van Liew—caused the same or similar damages to [Resource Recovery], plus the clear evidence that the damages were primarily caused by [Resource Recovery's] own malfeasance."

We begin our analysis of Restivo's contentions by noting that, to "maintain a cause of action for negligence, the plaintiff must establish four elements: (1) a legally cognizable duty owed by defendant to plaintiff; (2) breach of that duty; (3) that the conduct proximately caused

- 12 -

the injury; and (4) actual loss or damage." *Medeiros v. Sitrin*, 984 A.2d 620, 625 (R.I. 2009); *see also Santana v. Rainbow Cleaners, Inc.*, 969 A.2d 653, 658 (R.I. 2009). We are concerned in this appeal only with the proximate cause element of proof relative to a negligence claim. Proximate cause "requires a factual finding that the harm would not have occurred but for the [act] and that the harm [was a] natural and probable consequence of the [act]." *Almonte v. Kurl*, 46 A.3d 1, 18 (R.I. 2012) (internal quotation marks omitted). Resource Recovery contends before this Court that, in the instant case, "causation was straightforward." However, after a thorough review of the extensive record in this case, we conclude that that statement is a gross exaggeration. In fact, we are of the decided opinion that the issue of causation was murky at best and that expert testimony was unquestionably required to prove that Restivo proximately caused Resource Recovery's damages.

In this context, the Court has explained that:

> "The use of expert testimony arises from a need which comes in turn from the fact that the subject matter of the inquiry is one involving special skills and training beyond the ken of the average layman. If all the facts and circumstances can be accurately described to a jury and if the jury is as capable of comprehending and understanding such facts and drawing correct conclusions from them as is the expert, there is no necessity for the expert testimony. The jury in such instances can determine the question just as well as the expert." *Barenbaum v. Richardson*, 114 R.I. 87, 90-91, 328 A.2d 731, 733 (1974); *see also Glennon v. Great Atlantic & Pacific Tea Co.*, 87 R.I. 454, 457, 143 A.2d 282, 284 (1958); *Fontaine v. Follett*, 51 R.I. 413, 416-17, 155 A. 363, 364 (1931).

We have more recently articulated the standard to be applied as follows: "It is well settled that expert testimony is required to establish any matter that is not obvious to a lay person and thus lies beyond common knowledge * * *." *Jessup & Conroy, P.C. v. Seguin*, 46 A.3d 835, 839 (R.I. 2012) (internal quotation marks omitted); *see also Broadley v. State*, 939 A.2d 1016, 1022 (R.I. 2008); *Ahmed v. Pannone*, 779 A.2d 630, 633 n.1 (R.I. 2001).

In cases dealing with medical malpractice and legal malpractice or with issues which required particularized knowledge of the medical or legal fields, we have over the years determined that one or more of the issues of standard of care, breach of the standard of care, and proximate causation were beyond the common knowledge of a lay person and required expert testimony. *See, e.g.*, *Ahmed*, 779 A.2d at 633; *Boccasile v. Cajun Music Ltd.*, 694 A.2d 686, 690 (R.I. 1997); *see generally Cappuccilli v. Carcieri*, 174 A.3d 722, 730 (R.I. 2017).

Specifically with respect to proximate causation, in *Almonte* we held that expert testimony on proximate cause was required in a case dealing with a patient who was brought to the hospital after a "severe psychological episode" but was not committed; rather, he was discharged at his request. *Almonte*, 46 A.3d at 8, 18. The patient subsequently committed suicide. *Id.* at 8. This Court held that expert testimony on proximate cause was necessary in that case because it would not be obvious to a lay person "what would most probably have resulted were Mr. Almonte to have been committed * * *." *Id.* at 18. Likewise, in *Vallinoto v. DiSandro*, 688 A.2d 830 (R.I. 1997), in a case where the plaintiff was suing her former attorney (with whom she had had an affair) for intentional infliction of emotional distress, we held that expert medical testimony was required with respect to establishing a causal link between her mental and physical complaints and her affair with her former attorney. *Vallinoto*, 688 A.2d at 833-34, 838. In *Mills v. State Sales, Inc.*, 824 A.2d 461 (R.I. 2003), we held that the "causal relationship between a particular toxin and its effect on the human body would have to be established through expert testimony." *Mills*, 824 A.2d at 468. And, in *Boccasile*, we held that, when the negligence at issue involved "the professional skill and judgment of a nurse," expert testimony as to proximate cause was required. *Boccasile*, 694 A.2d at 690 (internal quotation marks omitted).

We also point the reader to numerous cases where we required expert testimony in situations not specific to proximate cause but which we also determined involved issues beyond the common knowledge of a lay person. *See, e.g.*, *Laplante v. Rhode Island Hospital*, 110 A.3d 261, 265 (R.I. 2015) (holding that the "question of whether and how defendants' diagnosis and treatment of [plaintiff] aggravated his pelvic fracture is one that must be answered with expert testimony"); *Sousa v. Chaset*, 519 A.2d 1132, 1135 (R.I. 1987) (holding that "plaintiff's urological condition, and the treatment he received or should have received for the same, were matters beyond the obvious common knowledge of the jury"), *abrogated on other grounds by Cruz v. DaimlerChrysler Motors Corp.*, 66 A.3d 446, 452 (R.I. 2013); *Young v. Park*, 417 A.2d 889, 893 (R.I. 1980) (holding that "matters concerning polycythemia and Myleran therapy are not so obvious that the need for expert testimony is obviated").

In our judgment, this case is comparable to the foregoing cases requiring expert testimony. In this case, we are confronted with alleged accounting malpractice as opposed to medical or legal malpractice; but accounting is a comparably specialized field, requiring specific training and skills.[8] It is clear that understanding how a negligent audit caused, or allowed to persist, damages such as those stemming from inappropriate charitable contributions and a change in the amount potentially gleaned from trust investments requires knowledge far beyond the ken of an ordinary lay person. *See Barenbaum*, 114 R.I. at 90-91, 328 A.2d at 733. It requires both an understanding of the auditing process as well as an understanding of what would likely have occurred had the problems concerning Resource Recovery's finances been brought to light sooner than they eventually were. Moreover, as Restivo points out, this case is further

---

[8]     *See, e.g.*, American Institute of Certified Public Accountants, *The Uniform CPA Examination*, https://www.aicpa.org/becomeacpa/cpaexam.html (last visited July 2, 2018) (discussing the examination required to become a certified public accountant).

complicated by the fact that Restivo was not the only purportedly negligent party. LGCD and Van Liew were both alleged to have been negligent parties, and any negligence on their part would potentially have had a significant impact on the damages relative to the charitable contributions and the trust investments. It is far from clear to a lay person which party's negligence proximately caused which specific portions of the damages that Resource Recovery allegedly incurred.

Resource Recovery contends before this Court that, "[b]ased on the testimony and the evidence on record, a jury could reasonably conclude that, had Restivo done its job, the conduct of the [Resource Recovery] bad actors would have been stopped sooner, and [Resource Recovery] would not have incurred damages." In our estimation, however, Resource Recovery takes an exceedingly simplistic view of the case that plainly does not demonstrate real appreciation of the depth of complexity which this difficult case embodies. Accordingly, it is clear to this Court that, to establish the causal connection between Restivo's purported negligence and the damages suffered by Resource Recovery, the testimony of an auditing/accounting expert was necessary. A jury simply could not determine such a question without expert testimony. *See Barenbaum*, 114 R.I. at 90-91, 328 A.2d at 733.

To further explicate our conclusion, we note that the facts of this case vary materially from cases in which this Court has held that expert testimony was not required. *See, e.g.*, *id.* at 90, 92, 328 A.2d at 734 (holding that there was no error in the trial justice's refusal to let the jury hear an architect's opinion about whether a stairway had been "improperly designed" because "it called for a conclusion of fact that was well within the jury's ability to make"); *Glennon*, 87 R.I. at 457, 143 A.2d at 284 (holding that it was error to admit the testimony of an architect as to how a particular wall could have been made to be safer); *Fontaine*, 51 R.I. at 416, 155 A. at 364

- 16 -

(holding that it was not error to prevent an engineer from testifying as to his opinion concerning whether a certain avenue "was safe and convenient for travelers with their teams, carts and carriages"). By way of a more detailed example, in *Giron* this Court held that expert testimony was not necessary. *Giron*, 985 A.2d at 1010. In that case, one of the plaintiffs was walking across a porch at his dwelling place when his "foot sank into the soft-wooden floorboards" and he was "propelled to the railing." *Id.* at 1005, 1010. He grasped the railing to stop himself from falling, but the railing gave way and he fell off the second floor porch to the sidewalk below. *Id.* We held that evidence as to the existence of defects in the railing and the floor of the porch, the landlord's awareness of such defects, and the landlord's failure to sufficiently warn the tenant constitued "more than sufficient evidence for a jury to find that [the landlord's] breach of her duty was the proximate cause of [the] injuries." *Id.* at 1010. It is certainly within the common knowledge of a lay person that, if a porch and a railing are both defective and the landlord knew of the defects and failed to warn against them, the landlord proximately caused the injuries sustained from a fall as a result of the defective porch and railing. That factual situation is not remotely comparable to the instant case. This case is not nearly as straightforward and commonsensical as *Giron* was, and it is further complicated by the presence in the case of multiple alleged tortfeasors.

As such, we consider it to be entirely consistent with our precedent to hold that expert testimony on the issue of proximate cause was required in this case. *See also Brown-Wilbert, Inc. v. Copeland Buhl & Co., P.L.L.P.*, 732 N.W.2d 209, 218 (Minn. 2007) (holding that, in order to survive a motion for a directed verdict (also called judgment as a matter of law) in an accounting malpractice case, the plaintiff was required to present expert testimony on causation); *Greenstein, Logan & Co. v. Burgess Marketing, Inc.*, 744 S.W.2d 170, 185 (Tex. App. 1987)

(holding, in an auditing malpractice action, that expert testimony is "usually necessary to establish * * * the causal link between the plaintiff's damages and the accountant's negligence").

## B

## Resource Recovery's Expert Witnesses

Having established that expert testimony as to proximate cause was required in this case, we must next ask ourselves, did Resource Recovery provide the required expert testimony as to proximate cause? Resource Recovery did present two expert witnesses at trial, but a close review of their testimony leads us to the conclusion that neither of those experts testified as to proximate cause.

We have stated that "for expert testimony on the issue of causation to have any evidentiary value, the expert must report that the injury most probably resulted from the cause alleged." *Salk v. Alpine Ski Shop, Inc.*, 115 R.I. 309, 313, 342 A.2d 622, 625 (1975) (internal quotation marks omitted). Our extensive review of the record reflects the fact that the experts presented by Resource Recovery definitely did not provide such testimony. Mr. Centofanti testified to the standard of care that applies to an accountant and the breach of that standard. He further testified to the damages with respect to the charitable contributions. Mr. DeNigris testified as to the damages with respect to the trust investments. Neither expert opined on proximate cause. As such, even when taking the evidence in the light most favorable to Resource Recovery and making no determinations as to credibility or the weight of the evidence, Resource Recovery failed to present the necessary expert testimony to sustain its contention that Restivo's alleged negligence proximately caused Resource Recovery's damages. *See Filippi*, 818 A.2d at 617.

- 18 -

Importantly, proximate causation is an element of both a negligence action and a contract action. *See Fogarty v. Palumbo*, 163 A.3d 526, 541 (R.I. 2017) (stating that a breach of contract claim requires a plaintiff to prove "the existence and breach of a contract, and that the defendant's breach thereof caused the plaintiff's damages"); *Medeiros*, 984 A.2d at 625.[9] As such, it is our view that Resource Recovery has failed to meet its burden of proof as to proximate causation, not just with respect to the professional malpractice count in the instant case but also with respect to the breach of contract count.

For these reasons, we hold that the trial justice erred in failing to grant Restivo's motion for judgment as a matter of law.

## IV

### Conclusion

For the reasons stated herein, we vacate the judgment of the Superior Court. We remand the record to that tribunal.

Justice Goldberg did not participate.

---

[9] We note as well that the counts for professional malpractice and breach of contract due to that alleged malpractice are, by their nature, intermingled. *See Credit Union Central Falls v. Groff*, 966 A.2d 1262, 1271 (R.I. 2009) ("The attorney-client relationship is contractual in nature and 'the gravamen of an action for attorney malpractice is the negligent breach of [a] contractual duty * * *.'") (quoting *Church v. McBurney*, 513 A.2d 22, 24 (R.I. 1986)). Additionally, the jury in the instant case did not make separate damage awards with respect to the separate counts pursuant to which it found Restivo liable.

**Chief Justice Suttell, concurring in part and dissenting in part.** In what I concede is an exceptionally close case, I find myself in partial disagreement with the majority; accordingly, I write separately.

The jury awarded damages in four separate amounts, as reflected in the jury verdict form: (1) $207,625.39 for loss "as it relates to charitable contributions"; (2) $83,500 for loss "as it relates to fees paid by Resource Recovery to Restivo under its contract with Resource Recovery"; (3) $20,255 for loss "as it relates to the fees paid by Resource Recovery to Restivo's successor, CCR"; and (4) $2,551,052 for loss "as it relates to investment in the [trust funds.]"

With respect to the latter amount, the investment losses, I agree with the majority that expert testimony on the issue of causation was required to give the jury an understanding of what losses were appropriately attributable to Restivo, as opposed to Van Liew Trust Company, the trustee of the two trust funds, or Lefkowitz, Garfinkel, Champi & DeRienzo, the previous auditor. It is perhaps not beyond the ken of an ordinary layperson to determine that, in the circumstances of this case, Restivo's professional malpractice resulted in losses in the trusts' investment portfolios. It is a far more complicated matter, however, to quantify the loss proximately caused by the auditor's negligence.

I do not have similar concerns with respect to the other elements of damages assessed by the jury. The $207,625.39 for inappropriate charitable contributions corresponds with Joseph Centofanti's testimony concerning the amount of "non-mission related" charitable contributions made in fiscal year 2007. Mr. Centofanti also testified that he had determined that there were $209,091.32 in "non-mission related" charitable contributions in fiscal year 2006. The jury, therefore, appears to have carefully examined the evidence and awarded damages for only one of the two fiscal years for which Restivo had been engaged as an auditor by Resource Recovery.

Mr. Centofanti testified that, in his expert opinion, Restivo "failed to identify and report the improper charitable contributions." I do not believe it to be beyond the understanding of a juror of ordinary intelligence to conclude that, had Restivo discovered and reported the improper contributions made during fiscal year 2006, such contributions would have been eliminated in fiscal year 2007. The causal connection, in my judgment, does not require any technical knowledge or particular understanding of the accounting profession. Accordingly, I would affirm the judgment with respect to the award of damages as it relates to charitable contributions.

The remaining damages amounts relate to the jury's finding that Restivo "breach[ed] its contractual agreement * * * to audit Resource Recovery's financial statements for the fiscal years 2006 or 2007[.]" The $83,500 award represents the fees paid to Restivo under the terms of this contract, less the amount attributable to auditing a pension fund, and the $20,255 was the amount paid to the successor auditor to correct the financial statements that were in error. Both of these awards appear to be straightforward figures that the jury was capable of assessing, without the assistance of expert testimony as to causation, for Restivo's breach of contract. I would affirm those awards as well.

SUPREME COURT – CLERK'S OFFICE

OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Rhode Island Resource Recovery Corporation v. Restivo Monacelli LLP. |
| **Case Number** | No. 2016-140-Appeal. (PB 10-4502) |
| **Date Opinion Filed** | July 3, 2018 |
| **Justices** | Suttell, C.J., Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice William P. Robinson III |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Michael A. Silverstein |
| **Attorney(s) on Appeal** | For Plaintiff: <br><br> Steven P. Wright, *Pro Hac Vice* <br> Thomas F. Holt, Jr., Esq. <br> Joseph J. Rodio, Esq. <br> Christopher J. Valente, Esq. <br><br> For Defendant: <br><br> Lauren E. Jones, Esq. <br> Robert C. Shindell, Esq. <br> Robert S. Thurston, Esq. |